959 F.2d 644
 David Edward MAUST, Plaintiff-Appellant,
v.
Dennis E. HEADLEY, Superintendent, Forensic Program, Elgin
Mental Health Center, Stephen L. Hardy, Dr., Superintendent,
Chester Mental Health Center, and Cynthia Dennison,
Employee, Forensic Unit, Elgin Mental Health Center,
Defendants-Appellees.
 No. 90-2994.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 10, 1991.
Decided March 26, 1992.
As Amended March 31, 1992.
Rehearing Denied April 23, 1992.
 
 Timothy A. Bridge (argued), Nancy L. Libman, Lorence Harley Slutzky, Steven W. Goldberg, Vernon A. Kowal, Robbins, Schwartz, Nicholas, Lifton & Taylor, Chicago, Ill., for plaintiff-appellant.
 Robert G. Toews, Office of the Atty. Gen., Chicago, Ill. (argued), for defendants-appellees.
 Before WOOD, Jr.,* POSNER and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 In this appeal we are asked to resolve whether a criminal defendant, found unfit to stand trial and remanded to the custody of the Illinois Department of Mental and Developmental Disabilities, has a protectible liberty and/or property interest to being confined in the least restrictive mental health facility. For the following reasons, we hold that no such interest exists under current Illinois law.
 
 I.
 
 2
 David Edward Maust was arrested and charged with murder. In June 1985, the Circuit Court of Cook County determined that Maust was unfit to stand trial and committed him to the Elgin Mental Health Center (Elgin), a moderately secure mental health institution operated by the Illinois Department of Mental and Developmental Disabilities (Department). However, following his unsuccessful escape attempt on July 16, 1987, Maust was transferred to the Chester Mental Health Center (Chester), a mental health institution providing a high level of security.
 
 
 3
 Unhappy with this unanticipated turn of events, Maust brought this 42 U.S.C. § 1983 action to challenge the constitutionality of his transfer. In his complaint, Maust claimed that his transfer to Chester was part of an elaborate scheme by certain Department officials to have him committed to a more restrictive mental health facility in violation of his fourteenth amendment due process rights. Specifically, Maust alleged that Dennis Headley, the superintendent of the Elgin forensics program, and Cynthia Dennison, an employee in Elgin's forensic unit, both unlawfully assisted him in his escape attempt by providing him money and advice as to the best time to leave the grounds. As a result, Maust asserted that he was unconstitutionally divested of his right to receive notice and a hearing prior to being moved to a more secure institution. Maust likewise claimed that Stephen Hardy, the superintendent at Chester, unconstitutionally interfered with his visitation rights by prohibiting him from seeing his psychologist and others after his transfer. For these alleged due process violations, Maust sought declaratory relief, compensatory damages of $25,000, and punitive damages of $50,000.
 
 
 4
 On July 16, 1990, Maust requested summary judgment regarding the constitutional violations allegedly committed by the defendants. In his summary judgment motion, Maust identified three specific liberty and property interests purportedly terminated by the defendants' conduct: (1) the right to adequate and humane treatment in least restrictive mental health institution, guaranteed by Mental Health Code (MHC) § 2-102[1]; (2) the right to notice and a hearing in the event of a transfer to a different mental health facility, guaranteed by MHC § 2-103[2]; and (3) the right to unimpeded visitation, guaranteed by MHC § 3-910[3]. The defendants responded with their own cross motion for summary judgment, in which they argued that Maust's transfer did not violate his due process rights because it fully complied with the Mental Health Code provisions for emergency transfers.[4] They also contended that, in any event, their actions were taken in an official capacity and were therefore shielded by the doctrine of qualified immunity.
 
 
 5
 By a memorandum opinion, the district court granted the defendants' cross-motion for summary judgment as to all alleged due process violations, holding that Maust failed to establish any protected liberty interest to being confined in the least restrictive mental health institution. In reaching this decision, the court first cited § 104-29 of the Illinois Code of Criminal Procedure (ICCP), which provides that "[i]n the event of any conflict between this Article and the 'Mental Health and Developmental Disabilities Code,' the provisions of this Article shall govern." The court then concluded that Maust's right under Mental Health Code § 2-102 to treatment "in the least restrictive environment" was effectively repealed by ICCP § 104-17(b), an amendatory provision enacted by the Illinois General Assembly in 1983:
 
 
 6
 If the defendant is placed in the custody of the Department of Mental Health and Developmental Disabilities, the defendant shall be placed in a secure setting unless the court determines that there are compelling reasons why such placement is not necessary (emphasis added).
 
 
 7
 Ill.Rev.Stat., ch. 38, p 104-17(b) (West 1989 Supp.). No reference was made concerning Maust's other asserted liberty interests. After Maust's motion for reconsideration was denied, he brought this appeal.
 
 II.
 
 8
 It is a familiar precept of constitutional jurisprudence that the fourteenth amendment prohibits a state from depriving a person of property or liberty without due process of law. Hence, the threshold issue in this case is whether Maust has presented a cognizable property or liberty interest under Illinois law. Vitek v. Jones, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980); Doe v. Milwaukee County, 903 F.2d 499, 502-03 (7th Cir.1990); Shango v. Jurich, 681 F.2d 1091, 1097 (7th Cir.1982). Only upon such a showing does the inquiry shift to whether the procedures that terminated that interest comport with due process. Shango, 681 F.2d at 1097.
 
 
 9
 In Johnson v. Brelje, 701 F.2d 1201, 1205-07 (7th Cir.1980), a case decided prior to the enactment of the ICCP § 104-17(b), we first considered whether a criminal defendant, found unfit to stand trial (UST), possessed a protectible liberty interest in being confined to the least restrictive mental health institution. In that case, the plaintiff challenged the constitutionality of the Department's practice of automatically assigning all UST's to custody of Chester unless circumstances dictated otherwise. Before discussing the merits this claim, we first determined that a UST had a protected interest in being confined to the least restrictive environment under MHC § 2-102:
 
 
 10
 This entitlement is a state-created liberty interest; in deciding whether to assign a UST to the restrictive environment of Chester, rather than to a less restrictive facility, the state must abide by the minimum requirements of procedural due process as defined by federal law (citations omitted).
 
 
 11
 Id. at 1205. Significantly, we also indicated that a UST's right to remain in an unrestrictive facility was subject to the Illinois Criminal Procedure Code, which likewise contained provisions governing the treatment of UST's. However, finding no conflict between the two codes with respect to the level of security appropriate for USTs, we concluded that the Department had violated the plaintiff's due process rights by depriving him of his right to being confined in the least restrictive environment. Id. at 1206.
 
 
 12
 In the instant case, Maust acknowledges that his rights under the Mental Health Code cannot be construed independently from the Criminal Code. Nevertheless, he contends that the district court erred in holding that his asserted liberty interests--once actionable under Johnson--were subsequently extinguished by the Criminal Code amendments concerning UST treatment. According to Maust, MHC § 2-102 and ICCP § 104-17(b) should be construed together to create a right to being confined in "the least restrictive, secure setting," rather than reading ICCP § 104-17(b) as an effective repeal of his right to treatment in the least restrictive environment. Assuming that no such right exists, however, Maust alternatively claims that his rights to notice, hearing and unimpeded visitation still survive the amendments to the Criminal Code. In either event, Maust maintains that the district court's entry of summary judgment in favor of the defendants must be reversed as a matter of law.
 
 
 13
 We review a challenge to an order granting summary judgment under a de novo standard, La Preferida, Inc. v. Cerveceria Modelo, S.A., 914 F.2d 900, 905 (7th Cir.1990); Merritt v. Broglin, 891 F.2d 169, 171 (7th Cir.1989), viewing the facts and all reasonable inferences taken therefrom in the light most favorable to the non-moving party. Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 742 (7th Cir.1991). A grant of summary judgment will not be upheld if there any issue as to a material fact. Kreutzer, at 743; First Wisconsin Trust Co. v. Schroud, 916 F.2d 394, 398 (7th Cir.1990). Having considered the district court's ruling in light of these principles, we conclude that the court properly granted summary judgment in favor of the defendants.
 
 
 14
 Turning to Maust's first contention, we find it highly unlikely that the Illinois General Assembly intended to create a right to being confined in "the least restrictive, secure environment." On their face alone, the terms "least restrictive" and "secure" are at odds. And, when viewed in the context of ICCP § 104-31--another amendatory provision affecting the rights of UST's--Maust's proposed interpretation appears an even less viable:
 
 
 15
 No defendant placed in a secure setting of the Department of Mental Health and Developmental Disabilities pursuant to the provisions of Sections 104-17 ... shall be permitted outside the facility's housing unless escorted or accompanied by personnel of the Department of Mental Health and Developmental Disabilities. Nor shall such defendant be permitted any off-grounds privileges, either with or without escort by personnel of the Department of Mental Health and Developmental Disabilities, or any unsupervised on-grounds privileges, unless such off-grounds or unsupervised on-grounds privileges have been approved by specific court order ...
 
 
 16
 The degree of supervision described above would scarcely qualify as that found in the "least restrictive environment." That being the case, we agree with district court's conclusion that these amendatory provisions affected the Criminal Code "in a way that radically altered the rights of criminal defendants found unfit to stand trial."
 
 
 17
 Contrary to Maust's assertion, the fact that the Criminal Code's amending language fails to cite any specific provisions of the Mental Health Code does not demonstrate the legislature's intent to preserve Maust's interest in being confined to the least restrictive environment. In the title to the legislative act amending § 104-17 of the Criminal Code, the Mental Health Code is expressly listed as one of the statutes affected by the legislation. It necessarily follows that any ensuing conflicts between the two codes must be resolved in favor of the Criminal Code. Nowhere is it stated that the operation of this conflict provision hinges on whether the conflict is specifically identified or not. Nor are we required to abandon logic and adopt a strained statutory reading, unintended by the Illinois General Assembly, solely for the sake of legislative harmony. We therefore hold that ICCP § 104-17 had the statutory effect of eliminating a UST's protectible liberty interest under the Mental Health Code to being confined in the least restrictive environment. To the extent that it conflicts with our holding today, our earlier decision in Johnson v. Brelje is no longer viable.
 
 
 18
 Maust's alternate contention--that his rights to notice, hearing and unimpeded visitation rights survive the Criminal Code amendments--is also flawed. With respect to his asserted interest in notice and a hearing prior to being transferred, the law is well-settled that state-created procedural rights do not, standing alone, constitute protected liberty interests. Shango v. Jurich, 681 F.2d 1091, 1100-1101 (7th Cir.1982). As we recently stated in Doe by Nelson v. Milwaukee County, 903 F.2d 499 (7th Cir.1990):
 
 
 19
 It is essential, therefore, to a proper analysis of a procedural due process claim ... that the court not confuse substance with process. One cannot have a "property interest" (or a life or liberty interest for that matter) in mere procedures because "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right."
 
 
 20
 903 F.2d at 502-03 (quoting Olim v. Wakinekona, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 1748-49, 75 L.Ed.2d 813 (1983)); see also Cain v. Larson, 879 F.2d 1424, 1426 (7th Cir.), cert. denied, 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 537 (1989) ("It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance."). Maust's rights to a notice and hearing under Mental Health Code § 3-910 have substantive meaning only if he has a protected liberty interest in remaining in the least restrictive mental health facility. Since he does not, as explained above, the procedures outlined in § 3-910 cannot serve as a basis for a claim of being deprived of a protected liberty interest.
 
 
 21
 We also seriously question Maust's contention that he has retained a viable liberty interest in unimpeded visitation. Visitation rights, in our view, would fall within the category of "on-grounds" privileges specified by ICCP § 104-31, and would therefore be severely curtailed consistent with that provision. However, we need not determine whether MHC § 2-103 was implicitly repealed by ICCP § 104-31, for defendant Hardy would be shielded from liability by the doctrine of qualified immunity in either scenario.
 
 
 22
 Under the doctrine of qualified immunity, government officials performing discretionary functions are protected from civil liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Davis v. Scherer, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984). The existence of a clearly established, constitutional right is a purely legal question which we review de novo. Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir.1988). Upon recognizing such a right, however, we must also examine the undisputed facts of the record to evaluate the objective legal reasonableness of the defendant's conduct. Id. at 1204. If there are issues of disputed fact upon which the question of immunity turns, or if it is clear that the defendant's conduct violated clearly established norms, summary judgment may not may granted. Green v. Carlson, 826 F.2d 647, 652 (7th Cir.1987).
 
 
 23
 We cannot say that Hardy's conduct was clearly illegal when he acted. There was no authority in force at the time this incident occurred which expressly holds that MHC § 2-103 provides a constitutional liberty interest in unimpeded visitation. Our holding in Johnson v. Brelje only recognized a UST's right to remain in the least restrictive environment pursuant to MHC § 2-102. However, even if Johnson can be construed to implicitly support a liberty interest in unimpeded visitation, the subsequent amendments to the Criminal Code certainly brought the viability of this interest into question. Hence, we conclude that Hardy actions were shielded by the doctrine of qualified immunity and therefore summary judgment in favor of the defendants was appropriate.
 
 
 24
 In rejecting each of Maust's asserted liberty interests, we do not mean to suggest that Maust lacked an actionable property interest in appropriate care and medical treatment while in the Department's custody at Elgin and Chester. Had Maust been deprived of such care at either institution because of his alleged escape attempt, granting summary judgment may very well have been improper; his right to adequate treatment remained intact regardless of whether he was confined to a minimally restrictive or secure facility. Maust, however, made no such claim. Instead, he inextricably linked his claim to treatment with his asserted right to being confined in the least restrictive environment. He therefore waived any argument that the defendants violated a liberty interest in proper care and medical treatment. See General Motors Acceptance Corp. v. Central National Bank of Mattoon, 773 F.2d 771, 778 n. 5 (7th Cir.1985); City of Chicago v. U.S. Department of Labor, 753 F.2d 606, 607 n. 1 (7th Cir.1985); United States ex rel. Mitchell v. Fairman, 750 F.2d 806, 807 (7th Cir.1984).
 
 III.
 
 25
 For the foregoing reasons, we AFFIRM the district court's entry of summary judgment in favor of the defendants.
 
 
 
 *
 Judge Wood, Jr., assumed senior status on January 16, 1992, which was after oral argument in this case
 
 
 [1]
 MHC § 2-102(a) provides in part that "[a] recipient of services shall be provided with adequate and humane care and services in the least restrictive environment...." Ill.Rev.Stat.1981, ch. 91 1/2, p 2-102(a)
 
 
 [2]
 MHC § 2-103(c) provides, in relevant part, that "[u]nimpeded, private and uncensored communication by mail, telephone and visitation may be reasonably restricted ... provided that notice of such restriction shall be given to all recipients upon admission." Ill.Rev.Stat.1989, ch. 91 1/2, p 2-103(c)
 
 
 [3]
 MHC § 3-910(a) provides as follows:
 (a) Whenever a patient who has been in a Department facility for more than 7 days is to be transferred to another facility under Section 3-908, the director of the facility shall give written notice at least 14 days before the transfer to the patient, his attorney, guardian, if any, and responsible relative. In the case of a minor, notice shall be given to his parents who executed the application for his admission, and to the minor himself if he is 12 years of age or older. The notice shall include the reasons for transfer, a statement of the right to object and the address and phone number of the Guardianship and Advocacy Commission. If the patient requests, the facility director shall assist him in contacting the Commission.
 Id. § 3-910(c).
 
 
 [4]
 MHC § 3-910(b) provides as follows:
 (b) In an emergency, when the health of the patient or the physical safety of the patient or others is imminently imperiled and appropriate care is not available where the patient is located, a patient may be immediately transferred to another facility provided that notice of the transfer is given as soon as possible but not more than 48 hours after transfer. The reason for the emergency shall be noted in the patient's record and specified in the notice.
 Id. § 3-910(b).