FIRST DIVISION

APRIL 6, 1998

No. 1-96-4142

C.J., K.M., and THOMAS JURESIC,

Plaintiffs-Appellants,

v.

THE DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 96 CO 80

Honorable

James F. Henry,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiffs C.J., K.M., and Thomas Juresic filed this civil action seeking injunctive relief against defendant, the Illinois Department of Mental Health and Developmental Disabilities (Department).  Plaintiffs are criminal acquittees who were confined at the Elgin Mental Health Center (Elgin) after a finding of not guilty by reason of insanity (NGRI). On March 29, 1996, plaintiffs filed suit against the Department challenging a policy that they allege does not allow the facility director of Elgin to exercise her professional judgment to consider whether any of the plaintiffs should be recommended for an unsupervised, on-grounds pass.  

The complaint asserts that the facility director should be permitted to exercise professional judgment in making this determination.  Plaintiffs ask the court to require that the Department allow the facility director of Elgin Mental Health Center to exercise professional judgment when giving individual consideration in determining whether to recommend NGRI acquittees for unsupervised on-grounds passes.  The complaint is not asking the court to order the Department to require the facility director of Elgin to recommend all NGRI acquittees at Elgin for unsupervised on-grounds passes.  

Plaintiffs are seeking injunctive relief against the policy of the Department, alleging that it violates Illinois law and the due process clause of the fourteenth amendment of the United States Constitution (U.S. Const. amend. XIV, §1).  The question presented is whether plaintiffs have substantive rights under the Mental Health and Developmental Disabilities Code of the State of Illinois (hereinafter Mental Health Code)(405 ILCS 5/2-102)(West 1994)) and under the due process clause of the fourteenth amendment, which have been allegedly violated by the practices of the Department of Mental Health and Developmental Disabilities regarding the issuance of unsupervised on-grounds passes to NGRI acquittees.  Plaintiffs also filed a motion for class certification.  In response, the Department filed a motion to dismiss under section 2-619 of the Code of Civil Procedure.  735 ILCS 5/2-619 (West 1994).  The trial court granted the defendant's motion to dismiss on all counts and denied the plaintiffs' motion for class certification.  It is from this order that the plaintiffs appeal.

On appeal, the plaintiffs assert the following:  (1) the circuit court erred in dismissing each of the plaintiffs' eight counts for failure to state a cause of action; (2) the Department's policy that does not permit the facility director of the Elgin Mental Health Center to exercise her professional judgment on whether to recommend any of the plaintiffs for unsupervised on-grounds passes violates the Mental Health Code and the fourteenth amendment; (3) the circuit court erred in dismissing this case for lack of jurisdiction; and (4) the circuit court abused its discretion in denying plaintiffs' motion for class certification.

FACTS

Plaintiffs allege that before May 30, 1990, certain NGRI acquittees received recommendations for unsupervised, on-grounds passes which, if approved by the court, permitted these acquittees to walk unescorted on most of the 80-acre Elgin grounds during daylight hours for up to two hours at a time.  In May 1990, two persons acquitted by reason of insanity escaped from Elgin while using their unsupervised on-grounds pass privileges.

The complaint further alleges that on May 30, 1990, the Department unilaterally terminated the issuance of these passes for NGRI acquittees and revoked the passes of those already in possession of the privilege.  In the months following the May 30, 1990, termination of on-grounds passes for all NGRI acquittees at Elgin, a 12-foot fence was built around the forensic facilities at Elgin.

Plaintiffs allege the determination to revoke the unsupervised on-grounds passes was made with respect to all NGRI acquittees at the Elgin facility and that no individual determinations were made regarding suitability for such a pass.  Though the Department still issues what is called an "unsupervised, on-grounds pass," plaintiffs claim that on May 30, 1990, the substance of this privilege was dramatically altered.  Rather than permitting NGRI acquittees with passes to freely travel the grounds of Elgin, plaintiffs contend that the possession of this pass only allows them to walk through a

200-foot-long screened-in passageway between two residential buildings, completely monitored by security personnel.

ANALYSIS

The Department's motion to dismiss originally brought pursuant to section 2-615 of the Code of Civil Procedure was subsequently brought as an amended motion to dismiss under section 2-619.

 In ruling on a section 2-619 motion to dismiss, a court may consider pleadings, depositions, and affidavits.  
Ozuk v. River Grove
 
Board of Education
, 281 Ill. App. 3d 239, 666 N.E.2d 687 (1996).  We review a trial court's dismissal of a complaint under section 2-619 
de
 
novo
.  
Metrick v. Chatz
, 266 Ill. App. 3d 649, 652, 639 N.E.2d 198 (1994); 
Golden v. Mullen
, No. 1-96-2931 (August 22, 1997).  For the purposes of a motion to dismiss, we must accept as true all well-pleaded facts in the complaint and all inferences that can reasonably be drawn in plaintiff's favor from those facts; dismissal is proper only if no facts may be proven by which the plaintiff can recover.  
Griffin v. Fluellen
, 283 Ill. App. 3d 1078, 1083, 670 N.E.2d 845 (1996).

The question on appeal is whether the existence of a genuine issue of material fact should have precluded dismissal or, absent such an issue of fact, whether dismissal was proper as a matter of law. 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994).  

We first address plaintiffs' contention that the trial court was incorrect to dismiss the complaint on the basis that the most appropriate forum for this case was before the criminal court judges who have ongoing supervisory responsibility for plaintiffs.  The record indicates that despite the trial judge's statement to this effect, he also stated that his court did have jurisdiction in the case and that venue was proper.  Thus the rationale for his dismissal on a jurisdictional basis is unclear.

The present cause is a civil action seeking to obtain injunctive relief for claims arising out of alleged violations of the Mental Health Code and the United States Constitution.  As the circuit court is a court of general jurisdiction, we find no reason for finding that the case was improperly 
before the trial court.  
Ferndale Heights
 Utility Co. v. Illinois Commerce Comm'n
, 112 Ill. App. 3d 175, 445 N.E.2d 334 (1982).

We now turn to the substantive basis of the plaintiffs' complaint, and we will address each count of the complaint individually.

I.  COUNT I

In count I of the complaint, plaintiffs allege that the Department's policy regarding unsupervised on-grounds passes violates the "least restrictive environment" mandate found in section 2-102(a) of the Mental Health Code.  This statute provides:

"A recipient of services shall be provided with adequate and 

humane care and services in the least restrictive environment***."  405 ILCS 5/2-102(a) (West 1994).

 All of plaintiffs' statutory claims arise from alleged violations of the Mental Health Code.  However, these claims must be examined in the context of section 5-2-4 of the Unified Code of Corrections (Code of Corrections), which provides for the involuntary admission of criminal defendants found to be NGRI.  730 ILCS 5/5-2-4 (West 1994).

Illinois law provides that the admission, detention, care, treatment or habilitation, review proceedings and discharge of NGRI defendants shall be under the Mental Health Code.  405 ILCS 5/1-100 (West 1994); 730 ILCS 5/5-2-4(b) (West 1994).  However, the statutes explicitly provide that in the event of a conflict between the Code of Corrections and the Mental Health Code, the provisions of the Code of Corrections shall govern. 730 ILCS 5/5-2-4(k) (West 1994).  When unsupervised on-grounds privileges are involved, then only section 5-2-4(b) of the Code of Corrections applies.  
People v. Chiakulas
, 288 Ill. App. 3d 248, 681 N.E.2d 35 (1997).

Section 5-2-4 of the Code of Corrections is "tailor-made" for NGRI acquittees because the "presence of danger is recognized, and protection of the public is a major function of the statutory provision."  
People v. Ferguson
, 238 Ill. App. 3d 448, 455, 603 N.E.2d 1257, 1261 (1992).  "The primary objective of section 5-2-4 is to insure that insanity acquittees are not indeterminately institutionalized while at the same time protecting society from the premature release of mentally ill persons who have been proved capable of dangerous acts."  
People v. Winston
, 191 Ill. App. 3d 948, 959, 548 N.E.2d 406, 414 (1989).  

Turning to the specific allegations in count I, section 5-2-4 of the Code of Corrections states that NGRI acquittees should be "placed in a secure setting unless the Court determines that there are compelling reasons why such placement is not necessary."  730 ILCS 5/5-2-4(a)(West 1994).  Though plaintiffs allege that the policy of denying unsupervised on-grounds privileges violates the requirement that recipients of services under the Mental Health Code must be placed in the "least restrictive" setting, we find that this particular section must be read in conjunction with section 5-2-4.  The "secure setting" provided for in section 5-2-4 of the Code of Corrections is in effect the least restrictive environment permitted for NGRI acquittees under the law, in the absence of compelling reasons for other placement.  

This issue was addressed in the federal court case 
Maust v.
 Headley
, 959 F.2d 644 (7th Cir. 1992).  Plaintiff Maust, a criminal defendant who had been found unfit to stand trial, challenged his transfer from one mental health facility to another.  He claimed the transfer violated his right to treatment in the "least restrictive mental health institution."  
Maust
, 959 F.2d at 646.   The same court, in 
Johnson v. Brelje
, 701 F.2d 1201 (7th Cir. 1983), previously held that a criminal defendant found unfit to stand trial had a protectable liberty interest in being confined to the least restrictive mental health institution.  However, the 
Maust
 court noted that this decision was made prior to the adoption of the language in section 5-2-4, that mandates placement of NGRI acquit
tees and other such persons in a "secure setting."  
Maust
, 959 F.2d at 647-48.  The court found that this amendatory language created a conflict between the Mental Health Code and the Code of Corrections with regard to placement of those found unfit to stand trial, and held the conflict should be resolved in favor of the Code of Corrections, as required by statute.  
Maust
, 959 F.2d at 647-48.  

The same rationale applies to the NGRI plaintiffs in the present case.  Section 3-814 of the 
Mental Health Code states: 

"If the [recipient of services] has been ordered committed to the 

facility after he has been found not guilty by reason of insanity, the treatment plan and its review shall be subject to the provisions of Section 5-2-4 of the Unified Code of Corrections."  405 ILCS 5/3-814 (West 1994).

Section 5-2-4 of the Unified Code of Corrections states, in relevant part:

"The defendant shall be placed in a secure setting unless the Court 

determines that there are compelling reasons why such placement is not necessary.  Such defendants placed in a secure setting shall not be permitted outside the facility's housing unit unless escorted or accompanied by personnel of the Department of Mental Health and Developmental Disabilities or with the prior approval of the Court for unsupervised on-grounds privileges as provided herein."  730 ILCS 5/5-2-4(a) (West 1994).

A secure setting is mandated by law unless a court determines that there are compelling reasons as to why a less secure placement is appropriate.  Accordingly, the dismissal of count I by the trial court was proper under section 2-619 as a matter of law.

II.  COUNT II

 Count II alleges that the plaintiffs and others similarly situated have not been considered for such passes based on an "individual services plan."  Specifically, plaintiffs contend that revocation of their passes violates their state-created liberty interest in receiving adequate and humane care pursuant to an individual services plan as provided by section 2-102(a) of the Mental Health Code.  This statute provides:

"A recipient of services shall be provided with adequate and 

humane care and services *** pursuant to an individual services plan ***."  405 ILCS 5/2-102(a) (West 1994).

We recognize that one of the most important rights that any person confined to a state mental hospital has is the right to an individual services plan providing adequate and humane care and services.  405 ILCS 5/2-102(a) (West 1994).  However, NGRI acquittees do not have a statutory right to have unsupervised on-grounds privileges. 

In Illinois, neither statute nor case law recognizes unsupervised on-grounds pass privileges as a mandatory element of mental health treatment pursuant to an individualized plan providing humane care and services for NGRI acquittees.  Section 5-2-4(b) of the Code of Corrections provides as follows:

"[T]he defendant shall not be permitted to be in the community in 

any manner, including but not limited to off-grounds privileges, *** unsupervised on-grounds privileges, discharge or conditional or temporary release, except by a plan as provided in this Section. ***  Such plan may also include unsupervised on-grounds privileges *** but only where such privileges have been approved by specific court order ***."  (Emphasis added.) 730 ILCS 5/5-2-4(b) (West 1994).

When interpreting a statute, the primary objective is to give effect to the legislature's intent, which is determined primarily from the legislative language itself.  
People v. Shelton
, 281 Ill. App. 3d 1027, 1033, 667 N.E.2d 562 (1996).  If the legislative intent can be ascertained from the statute's language, it will be given effect without resorting to other aids for construction.  
Shelton
, 281 Ill. App. 3d at 1033. 

An examination of the statute indicates the language regarding the issuance of the passes in question is permissive, not mandatory.  The statute makes it clear that NGRI acquittees placed in a secure setting may be considered for certain privileges - but nowhere in the statute does it mandate the consideration for such a pass.  Under the plain language of the statute, recommendation of the unsupervised on-grounds pass is left to the discretion of the Department subject to the approval of the court.  

As the General Assembly chose not to make pass privileges mandatory, the passes cannot be a required element of the adequate and humane care which must be provided pursuant to an individual services plan. Any attempt to expand this privilege must be made by the legislature, not the courts. 

Therefore, plaintiffs' claim that the Department's policy regarding unsupervised on-grounds passes violates their right to adequate and humane care and services pursuant to an individual services plan fails as a matter of law.  Plaintiffs have no state-created interest in pass privileges as a mandatory requirement of adequate and humane care and services and, thus, cannot pursue a claim for injunctive relief to enforce any such interest.

III.  COUNT III

Plaintiffs allege in count III of the complaint that they are being denied mental health services based on a criminal record unrelated to present dangerousness, in violation of section 2-100(b) of the Mental Health Code.  405 ILCS 5/2-100(b) (West 1994).  Plaintiffs allege the Department's refusal to allow the Elgin facility director to consider any NGRI acquittee for an on-grounds pass is based solely on the criminal court convictions of the acquittees and is unrelated to their present dangerousness.

Because the General Assembly did not make pass privileges mandatory for NGRI acquittees, it could not have intended to make pass privileges a required element of their mental health services plans.  Thus, count III of plaintiffs' complaint must also fail as a matter of law.

IV.  COUNT IV

Count IV alleges a violation of section 2-202 of the Mental Health Code, which states the Director of the Department and the director of each facility shall adopt policies necessary to implement the Mental Health Code, but that these policies shall not restrict or limit the rights guaranteed by the Code. 405 ILCS 5/2-202 (West 1994).

Count IV, as pled, restates violations of plaintiffs' right to care in the least restrictive environment under section 2-102(a) (see count II) of plaintiffs' right to care and services pursuant to an individual service plans under section 2-102(a) (see count II), and their right not to be denied mental health and developmental services because of a criminal record unrelated to present dangerousness under section 2-100(b) (see count III).  Based on the reasons discussed above, we find count IV also fails as a matter of law under a section 2-619 analysis.

V.  COUNT V

Count V states that the Department is violating the due process clause of the fourteenth amendment of the United States Constitution by failing to protect the plaintiffs' state-created liberty interests in treatment in the least restrictive setting, individual assessment of treatment, and not being denied mental health services on the basis of criminal record unrelated to present dangerousness.

Count V alleges the Department fails to provide sufficient procedures to protect the plaintiffs' state-created liberty interests.  However, we have determined that there is no state-created liberty interest in treatment in the least restrictive environment or pass privileges as a mandatory form of mental health treatment or services.  Therefore, this claim must also fail.

VI.  COUNT VI

In count VI, plaintiffs allege the Department failed to provide constitutionally required conditions of confinement under the due process clause of the fourteenth amendment.  The fourteenth amendment provides that a state cannot deprive any person of life, liberty or property, without due process of law.  The mere fact that plaintiffs have been involuntarily committed as NGRI acquittees does not deprive them of substantive liberty interests under the fourteenth amendment.  See 
Vitek v. Jones
, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1979).

In count VI, plaintiffs allege that the due process clause allows restriction on the freedom of bodily movement of involuntarily committed mental patients only pursuant to a professional judgment that restrictions are necessary for security or treatment reasons.  Count VI further alleges that the Department's policy never to allow the Elgin facility director to consider or recommend any member of the plaintiff class for on-grounds privileges restricts their freedom of bodily movement.

The Supreme Court has recognized that "[l]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action."  
Greenholtz v. Inmates of Nebraska Penal & Correctional
 Complex
, 442 U.S. 1, 18, 60 L. Ed. 2d 668, 682-83, 99 S. Ct. 2100, 2109 (1979) (Powell, J., concurring in part and dissenting in part). 

In 
Youngberg v. Romeo
, 457 U.S. 307, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1982), the Court addressed the liberty interests of a developmentally disabled man, Nicholas Romeo, who was involuntarily committed to a state institution.  In response to injuries that he suffered at the institution, Romeo's mother filed a civil rights suit against institution officials, asserting her son had been denied his constitutional rights to safe conditions of confinement, freedom from bodily restraint and training or "habilitation."    The Court found that the liberty interest in freedom from bodily restraint survives criminal conviction, incarceration, and involuntary commitment. 
 
Youngberg
, 457 U.S. at 319, 73 L. Ed. 2d at 39, 102 S. Ct. at 2460.  The Supreme Court held that the interest in freedom of bodily movement is not absolute, and the state has a legitimate interest in restraining the movement of individuals placed in its institutions.  
Youngberg
, 457 U.S. at 320, 73 L. Ed. 2d at 40, 102 S. Ct. at 2460.  Under 
Youngberg
, an individual's liberty interest must be weighed against the state's asserted interest for restraining liberty.  
Youngberg
, 457 U.S. at 321, 73 L. Ed. 2d at 40-41, 102 S. Ct. at 2461.  The Supreme Court established that the appropriate standard to apply in balancing these two interests is whether professional judgment was exercised prior to the liberty deprivation.  
Youngberg
, 457 U.S. at 324, 73 L. Ed. 2d at 42, 102 S. Ct. at 2462.  

In 
Foucha v. Louisiana
, the Supreme Court recognized that freedom from bodily restraint is a liberty interest that applies to insanity acquittees.  
Foucha v. Louisiana
, 504 U.S. 71, 80, 118 L. Ed. 2d 437, 448, 112 S. Ct. 1780, 1785 (1992).  The 
Foucha
 case involved a Louisiana statute that allowed an insanity acquittee to be confined even after the hospital reported no evidence of mental illness.  The Court found that the statute violated the due process clause of the fourteenth amendment.  The Court stated that "'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" 
Foucha
, 504 U.S. at 80, 118 L. Ed. 2d at 448, 112 S. Ct. at 1785, quoting 
Jones v. United States
,
 463 U.S. 354, 361, 77 L. Ed. 2d 694, 703, 103 S. Ct. 3043, 3048 (1983).  

     In 
Johnson v. Brelje
,
 the seventh circuit recognized a substantive liberty interest in freedom of bodily movement.  
Johnson
,
 701 F.2d at 1201. In Johnson, the plaintiffs were criminal defendants found unfit to stand trial.  The Johnson plaintiffs alleged the Department's practice of confining them indoors for months at a time violated their constitutional rights, though no actual physical restraint was alleged.  Although the facility had a policy that allowed outdoor activities five times weekly, the evidence showed the plaintiffs were rarely, if ever, permitted outdoors.  The court noted that Department officials had not asserted any reason for the failure to permit outdoor activities pursuant to their policy.  The court said:

"The plaintiffs' freedom of movement *** is limited and the defendants 

have not justified this restriction in terms of legitimate interests in treatment and security; therefore, in confining the plaintiffs indoors, we are not 'certain that professional judgment in fact was exercised.'"  
Johnson
, 701 F.2d at 1209, quoting 
Youngberg
, 457 U.S. at 321, 73 L. Ed. 2d at 41, 102 S. Ct. at 2461.

The court held plaintiffs were unconstitutionally denied the freedom to go outdoors, in violation of their right to freedom of bodily movement.  
Johnson
, 701 F.2d at 1208. 

    In the present case, the trial court found that under 
People v.
 Owens
, 269 Ill. App. 3d 152, 645 N.E.2d 483 (1994), plaintiffs had no rights to the statutory and constitutional liberty interests asserted.  Under 
Owens
, an NGRI acquittee may petition the court to modify the treatment plan to obtain additional privileges beyond those recommended by the Department, but the NGRI acquittee is not entitled to a hearing on the petition.  
Owens
, 269 Ill. App. 3d at 159.  However, the 
Owens
 case addresses a substantially different issue than that in the present case.  The 
Owens
 decision defines the NGRI acquittee's rights when requesting unsupervised on-grounds passes. In the present case, however, we are called upon to define the nature of the duty the Department owes to an NGRI acquittee when restraining freedom of movement in the context of unsupervised on-grounds passes under the due process protection of the fourteenth amendment. 

We believe in the present case, plaintiffs have adequately pled a constitutionally protected liberty interest in freedom of bodily movement, challenging the Department's alleged policy preventing the facility director of Elgin from considering unsupervised on-grounds passes for the plaintiffs.  

The Department denies that such a policy or practice exists. The record contains an affidavit from Thomas Monahan, forensic program director and assistant facility director of Elgin, which denied the existence of any Department policy that prohibits him or other Department staff from considering or recommending an NGRI acquittee for passes or privileges.  In the affidavit, Monahan states the following:

"In my experience as the Forensic Program Director at Elgin, I am 

personally aware of criminal court judge's orders approving recommendations that Elgin be allowed to provide specific privileges, including passes, as part of the treatment plan for specific individuals.  In such cases, Elgin implements the treatment plan accordingly.  Should the court rule that the treatment plan is to be less or more restrictive than that proposed by Elgin or the NGRI himself or herself, Elgin follows the court's order."

This affidavit does not in and of itself require dismissal because a genuine issue of material fact exists as to what constitutes an unsupervised on grounds pass.  Significantly, Monahan's affidavit does not describe what unsupervised on-grounds passes are.  According to the uncontradicted pleading of the plaintiffs, unsupervised on-grounds pass privileges for NGRI acquittees consist solely of permitting the NGRI acquittees to walk down a 200-foot-long enclosed area with a security team at both ends.  Monahan neither confirms not denies this alleged fact.

This question of fact as to what constitutes an unsupervised on-grounds pass must be addressed before it can be determined whether the Department has violated the constitutional prohibition against restrictions on the freedom of bodily movement of involuntarily committed mental patients.

Plaintiffs allege in their complaint that the Department has established a policy preventing the Elgin facility director from exercising the discretion to recommend on-grounds unsupervised passes for NGRI acquittees.  "[T]o the extent that any administrative rule is in conflict with the statutory language under which the rule is adopted, it too is invalid."  
Aurora East Public School District No.
 131 v. Cronin
, 92 Ill. App. 3d 1010, 1014, 415 N.E.2d 1372 (1981).  In Aurora, the court found an administrative rule to be invalid because the agency had "taken away, for its own use, the discretion granted" by statute to local officials.  
Aurora
, 92 Ill. App. 3d at 1018.  The court declared the rule invalid and enjoined its enforcement.

Here, as in 
Aurora
, plaintiffs seek an injunction that would effectively prevent enforcement of an alleged Department policy that restricts the facility director's exercise of statutorily granted discretion.  Plaintiffs seek an order compelling the director to exercise discretion to recommend on-grounds passes, where clinically appropriate.  The order sought would not direct the manner in which the director exercised that discretion.  However, the order would mandate action by Elgin's director to allow the exercise of professional judgment in considering the recommendation of NGRI acquittees at Elgin for unsupervised on-grounds passes.  

Plaintiffs allege that on May 30, 1990, the Department terminated all on-grounds passes for NGRI acquittees at Elgin, without any individualized assessments.  Agency actions may be considered arbitrary where the agency has relied on factors the legislature did not intend it to consider, failed to consider factors important to its decision, or suddenly changed its policy or practices.  
Greer v.
 I
llinois Housing Development Authority
, 122 Ill. 2d 462, 505-06, 524 N.E.2d 561 (1988).  The decision to revoke all passes allegedly resulted from a policy change in which the Department prohibited the Director from exercising professional judgment in considering NGRI acquittees for unsupervised on-grounds passes.

Contrary to the Department's argument, plaintiffs here do not seek imposition of a rule requiring all NGRI acquittees to be treated alike.  Instead, plaintiffs seek relief from an alleged policy which, contravening our supreme court's decision in 
People v. Roush
, 101 Ill. 2d 355, 462 N.E.2d 468 (1984), is directed at all NGRI acquittees at Elgin, limiting their freedom of movement without exercise of professional judgment.

Under the balancing test articulated in 
Youngberg
, it must be determined whether the Department's replacement of pass privileges with the above described "pass" constitutes a violation of the constitutionally protected liberty interest in freedom of bodily movement of NGRI acquittees.  These interests are not absolute.  In operating an institution such as Elgin, it is necessary for the state to restrain the movement of residents to protect them, as well as others, from violence.  The issue is not simply whether a substantive liberty interest exists and has been limited, but whether the extent, nature and duration of the limitation is such as to violate due process.  

We find dismissal under a section 2-619 analysis is not warranted as there is a genuine issue of material fact.  Issues raised by this complaint include but are not limited to the following:

(1) what in fact constitutes an unsupervised on-grounds pass 

and whether this pass violates the plaintiffs' liberty interest in freedom of movement;

(2) whether in fact plaintiffs are confined indoors and whether the 

conditions of confinement since May 30, 1990, constitute a "lock down" at the Elgin Mental Health Center;

(3) whether in fact the Department has adopted policies or practices 

that prohibit Elgin staff members from exercising their individualized professional judgment in considering and recommending an NGRI acquittee for unsupervised on-grounds passes;

(4) whether in fact professional judgment is being exercised in making 

individual recommendations regarding unsupervised on-grounds passes; and

(5) whether defendants have lawful justification consistent with due process for alleged restrictions on plaintiffs' movement based on legitimate state interests in treatment and security.

It is for the trial court to apply the 
Youngberg
 test and determine whether professional judgment was exercised prior to the alleged liberty deprivation when balancing the NGRI acquittees' liberty interest against the Department's interest in restraining liberty.  

VII.  COUNT VII

To the extent that count VII alleges violations of section 2-102(a) of the Mental Health Code, addressing the alleged statutory right to be provided services in the least restrictive environment and pursuant to an individualized service plan, count VII fails to state a cause of action for the reasons discussed above.  

The remaining allegations of count VII allege that the due process clause of the fourteenth amendment prohibits restrictions on freedom of bodily movement of NGRI acquittees where the state's interests in restricting liberty do not outweigh the NGRI acquittees' interests in freedom of bodily movement.  Count VII simply restates that the balancing test we recognized under our discussion of the pleadings in count VI must be used to resolve questions of whether the Department has violated the constitutional rights of the NGRI acquittees.

We find that the due process violations alleged in count VII have been adequately pled in count VI. Accordingly, count VII merges with count VI.

VIII.  COUNT VIII

     Count VIII alleges that the due process clause of the fourteenth amendment requires that the nature of the NGRI acquittee's commitment bear a reasonable relation to the purpose for which the person is committed.

     Section 5-2-4 of the Code of Corrections indicates that the purpose of commitment following an insanity acquittal is "'to treat the individual's mental illness, and at the same time protect him and society from his potential dangerousness.'"  
People v. Pastewski
, 164 Ill. 2d 189, 197, 647 N.E.2d 278 (1995), quoting 
People v. Williams
, 140 Ill. App. 3d 216, 228, 488 N.E.2d 649 (1986).  This purpose is consistent with the overall purpose of the Code of Corrections, which is designed to protect society from future criminal conduct by past offenders (730 ILCS 5/1-1-2(b) (West 1994)), prevent arbitrary or oppressive deprivations of the liberties of offenders (730 ILCS 5/1-1-2(c) (West 1994)), and restore offenders to useful citizenship (730 ILCS 5/1-1-2(d)(West 1994).  See 
Turner v. Campagna
, 281 Ill. App. 3d 1090, 1094, 667 N.E.2d 683, 687 (1996), appeal denied, 168 Ill. 2d 627, 671 N.E.2d 744 (1996).

In determining whether a substantive right protected by the due process clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society."  
Poe v. Ullman
, 367 U.S. 497, 542, 6 L. Ed. 2d 989, 1019, 81 S. Ct. 1752, 1776 (1961) (Harlan, J., dissenting).  In seeking this balance in other cases, the Court has weighed the individual's interest in liberty against the state's asserted reasons for restraining individual liberty.

In 
Jackson v. Indiana
, 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972), the Court suggested a constitutional standard for evaluating the conditions of a civilly committed person's confinement:  "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." 
Jackson
, 406 U.S. at 738, 32 L. Ed. 2d at 451, 92 S. Ct. at 1858.  

What constitutes an unsupervised on-grounds pass is an issue of material fact which must be determined before the conditions of confinement can be evaluated using the 
Jackson
 standard.  There are issues of material fact that must be addressed before the court can assess whether the Department exercised professional judgment in the alleged curtailment of plaintiffs' liberty interests.  Accordingly, we find that the existence of a genuine issue of material fact precludes dismissal under section 2-619.

IX. CLASS CERTIFICATION

Our holding that plaintiffs' complaint states a valid cause of action requires that the question of class certification be determined by the trial court.  See 
Stinson v. Physicians Immediate Care, Ltd.
, 269 Ill. App. 3d 659, 646 N.E.2d 930 (1995).

A party may sue as representative of a class only if the court finds: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, which common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.  735 ILCS 5/2-801 (West 1994).

Additionally, in the particular context of this case, it need be determined whether a class action is an appropriate mechanism for resolving the controversy in light of the ongoing jurisdiction by the judges of the criminal court who committed the NGRI acquittees to the Department.

If on remand the circuit court determines this case may proceed as a class and plaintiffs are granted the injunction they seek, the individual criminal court judge, after reviewing the proposed scope and limits of the unsupervised on-grounds pass recommended by the Department, will still ultimately decide whether an NGRI acquittee should get a pass.  730 ILCS 5/5-2-4(b) (West 1994).  A criminal court judge maintains jurisdiction over an NGRI acquittee that he or she committed to a mental institution.  See 
People v. Roush
, 101 Ill. 2d 355, 363, 462 N.E.2d 468, 472 (1984); 730 ILCS 5/5-2-4 (West 1994).  This judge, by maintaining jurisdiction over an NGRI acquittee, determines what measures are appropriate to reasonably assure satisfactory progress in treatment and the safety of an NGRI acquittee and the community. 

We reject the defendant's argument that the relief the plaintiffs seek is to allow the plaintiffs to dictate the perimeters of their confinement.  Nothing in this opinion indicates that the courts will be involved in the day-to-day administration of the Department or that the inmates are to dictate to the Department how the Elgin facility should be operated.  We recognize that these decisions are appropriately made by the facility administrators. 

We are mindful of the concerns the supreme court expressed in 
Roush
 regarding court interference with the administration of a mental institution under the state's control.  In the present case, in contrast to 
Roush
, the NGRI acquittees at Elgin seek to compel the Department to exercise professional judgment when giving individual consideration regarding whether to recommend an NGRI acquittee for unsupervised on-grounds passes.  Exercise of professional judgment is required for recommendations that limit plaintiffs' liberty interest.  
Youngberg
 457 U.S. at 324, 73 L. Ed. 2d at 42, 102 S. Ct. at 2462.  Such recommendations would continue to be reviewed by the criminal court judges who retain jurisdiction over their NGRI acquittees committed to the Department.  Those judges would continue to approve, deny or modify the Department's recommendations.

Finally, nothing in this opinion indicates that if this injunction were granted, all NGRI acquittees would be given unsupervised on-grounds privileges.

CONCLUSION

For the foregoing reasons, we hold that the trial court erred in dismissing plaintiffs' complaint as to counts VI and VIII.  We agree with the trial court's dismissal of counts I, II, III, IV, and V.  Count VII was properly dismissed to the extent it alleges violations of the Mental Health Code.  Count VII merges with count VI to the extent it alleges due process violations previously pled in count VI.

The judgment of the trial court is affirmed in part and reversed in part, and this cause of action is remanded to the trial court for further action consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

MCNULTY, P.J. and RAKOWSKI, J., concur.