THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL SHELTON, Defendant-Appellant.

First District (3rd Division)   No. 1—95—0296

Opinion filed June 12, 1996.

Edwin F. Mandel Legal Aid Clinic, of Chicago (Mark J. Herman, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After being found not guilty of attempted murder (720 ILCS 5/8—4, 9—1) (West 1992)) and aggravated battery (720 ILCS 5/12—4 (West 1992)) by reason of insanity, defendant, Michael Shelton, was remanded to the custody of the Illinois Department of Mental Health and Developmental Disabilities (DMHDD). He is presently an

inpatient at the Elgin Mental Health Center. In November 1994, he filed a *pro se* petition for discharge or conditional release under section 5—2—4(e) of the Uniform Code of Corrections. 730 ILCS 5/5—2—4(e) (West 1992). This appeal arises from the circuit court's decision to strike defendant's petition as insufficient.

On appeal, defendant asserts that the trial court erred in striking his *pro se* petition for discharge or conditional release because (1) the plain language of section 5—2—4(e) does not require a more specific petition; (2) the pleading requirements for mental health facility directors under section 5—2—4(d) of the Unified Code of Corrections (730 ILCS 5/5—2—4(d) (West 1992)) were improperly applied to mental health patients under section 5—2—4(e); (3) the pleading requirements imposed were an unfair burden on a mental health patient; (4) defendant was denied a hearing as required under section 5—2—4(e); (5) defendant did not receive notice, an opportunity to present his petition at the proceeding, or an independent psychiatric examination as required by section 5—2—4(f) of the Unified Code of Corrections (730 ILCS 5/5—2—4(f) (West 1992)); and (6) defendant was denied effective assistance of counsel. For the following reasons, we reverse and remand.

The issue on appeal is whether defendant's petition was sufficient under section 5—2—4(e). In his petition, defendant stated that (1) he was found not guilty by reason of insanity and committed to the custody of DMHDD; (2) he is presently confined at Elgin Mental Health Center; (3) he is not subject to involuntary admission and is no longer in need of mental health services on an inpatient basis; (4) he is not subject to involuntary admission and is no longer in need of mental health services on either an inpatient or outpatient basis; (5) he is indigent; and (6) he has not filed a petition under section 5—2—4 within the past 60 days. Defendant requested that the court appoint counsel to represent him, order an independent psychiatric examination pursuant to section 5—2—4(f), and set the motion for a hearing within 30 days.

After defendant filed his section 5—2—4(e) petition, the State's Attorney's office filed a motion to strike the petition for being insufficient under section 2—615 of the Civil Practice Law (735 ILCS 5/2—615 (West 1992)). In its motion, the State urged the trial court to require defendant to comply with the provisions of section 5—2—4(d), which applies to facility directors who recommend that a defendant be either discharged or conditionally released because he or she is no longer subject to involuntary admission or in need of mental health services.

After the court received defendant's *pro se* petition, it appointed

an assistant public defender to represent him, but defendant was not notified of the court proceeding. With no objection from defendant's attorney, the trial court struck the petition for insufficiency. Thus, no hearing or psychiatric exam was ordered.

Section 5—2—4(e), which applies to insanity acquittees, states:

"A defendant admitted pursuant to this Section, or any person on his behalf, may file a petition for transfer to a non-secure setting within the Department of Mental Health and Developmental Disabilities or discharge or conditional release under the standards of this Section in the court which rendered the verdict. *Upon receipt of a petition for transfer to a non-secure setting or discharge or conditional release, the court shall set a hearing to be held within 30 days.* Thereafter, no new petition may be filed for 60 days without leave of the court." (Emphasis added.) 730 ILCS 5/5—2—4(e) (West 1992).

In contrast, section 5—2—4(d), which applies to facility directors, provides in part:

"When the facility director determines that:

(1) the defendant is no longer subject to involuntary admission or in need of mental health services on an inpatient basis; and

(2) the defendant may be conditionally released because he or she is still in need of mental health services or that the defendant may be discharged as not in need of any mental health services; or

(3) the defendant no longer requires placement in a secure setting; the facility director shall give written notice to the Court, State's Attorney and defense attorney. *Such notice shall set forth in detail the basis for the recommendation of the facility director, and specify clearly the recommendations, if any, of the facility director, concerning conditional release.*" (Emphasis added.) 730 ILCS 5/5—2—4(d) (West 1992).

Defendant asserts that the trial court imposed a pleading requirement that is inconsistent with the plain language of section 5—2—4(e) and that applying section 5—2—4(d)'s requirements to section 5—2—4(e) petitions would place an unfair burden on a mental health patient. He maintains that an insanity acquittee is not capable of supplying detailed psychiatric conclusions because he is not a psychiatrist or psychologist and the State is in control of those details. Further, defendant insists that an insanity acquittee who is confined to a mental health facility is not similarly situated as the facility director, who is a mental health professional with other mental health professionals to assist in preparing a recommendation.

Defendant cites the *Report, Governor's Comm'n for Revision of the Mental Health Code of Illinois* (1977) (Report), which is regularly

relied on by Illinois courts as a primary source for legislative history of mental health legislation. *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 505-06, 520 N.E.2d 37 (1988); *People v. Bledsoe*, 268 Ill. App. 3d 869, 872, 645 N.E.2d 411 (1994).

The report's comments about section 5—2—4(d) are, in part, as follows:

> "[T]his subsection authorizes judicial review of the decision of the superintendent of the facility to release or discharge committed acquittees. In order to make this opportunity meaningful, the superintendent is required to inform the committing court and the State's Attorney (whose prior involvement with the acquittee comprehended both criminal and civil jurisdictions) of his intention and to provide substantial documentation to support his belief that the acquittee is prepared for a certain level of reintroduction into the community." *Report, Governor's Comm'n for Revision of the Mental Health Code of Illinois*, at 49-50 (1977).

In comparison, the Report makes no comment on section 5—2—4(e), but summarizes it as follows:

> "Permits committed acquittee or person on his behalf to petition the court for discharge or release; specifies the time within which the court must hear a petition." *Report, Governor's Comm'n for Revision of the Mental Health Code of Illinois*, at 50 (1977).

Defendant cites section 5—2—4(g), which establishes the burdens of proof, as another indication that the legislature placed facility directors in a different position than insanity acquittees. Section 5—2—4(g) provides in part:

> "The burden of proof and the burden of going forth with the evidence rest with the State when a hearing is held to review the determination of the facility director that the defendant should be transferred to a non-secure setting, discharged or conditionally released. The burden of proof and the burden of going forth with the evidence rest on the defendant when a hearing is held to review a petition filed by or on behalf of such defendant." 730 ILCS 5/5—2—4(g) (West 1992).

The State responds that the document defendant filed was not sufficient to constitute a petition because it did not allege any facts to support his legal conclusion that he is entitled to discharge or conditional release. Contending that defendant should be required to present a summary of the facts that led him to his conclusion that he was no longer in need of inpatient treatment, the State requests that the requirements of section 5—2—4(d) be applied to section 5—2—4(e) petitions.

The State compares defendant, an insanity acquittee, to *pro se* defendants in post-conviction petitions, who must plead sufficient

facts to support their claim even though they are not expected to construct legal arguments, cite legal authority, or draft the petition as artfully as an attorney would. *People v. Lemons*, 242 Ill. App. 3d 941, 946, 613 N.E.2d 1234 (1993).

Despite the State's urging, post-conviction petitions by prisoners who have been convicted of a crime and have previously been afforded a direct appeal cannot be compared to section 5—2—4(e) petitions by insanity acquittees who have not been convicted of a crime. Unlike post-conviction petitions, a section 5—2—4(e) discharge petition is not based on a challenge to the proceedings that led to commitment. While the State is entitled to presume that a defendant's confinement after a conviction remains lawful until his sentence has expired, the continued confinement of a mental health patient who has been acquitted by reason of insanity can only be justified by his continued mental illness and dangerousness. *Foucha v. Louisiana*, 504 U.S. 71, 77, 118 L. Ed. 2d 437, 446, 112 S. Ct. 1780, 1784 (1992).

■ When interpreting a statute, the primary objective is to give effect to the legislature's intent (*People v. Lowe*, 153 Ill. 2d 195, 201, 606 N.E.2d 1167 (1992)), which is determined primarily from the legislative language itself. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 382, 620 N.E.2d 1070 (1993). If the legislative intent can be ascertained from the statute's language, it must prevail and will be given effect without resorting to other aids for construction. *DiFoggio*, 156 Ill. 2d at 382; *People v. Bryant*, 128 Ill. 2d 448, 455, 539 N.E.2d 1221 (1989).

■ After examining the language of section 5—2—4(e), we conclude that it requires only that an insanity acquittee file a petition. It does not include any requirement for specific facts. Furthermore, a comparison of section 5—2—4(d) with section 5—2—4(e) suggests that the legislature intended that a facility director have different notice requirements than an insanity acquittee. Unlike the express requirements under section 5—2—4(d) that the facility director must "set forth in detail the basis for the recommendation of the facility director, and specify clearly the recommendations, if any, of the facility director, concerning conditional release," section 5—2—4(e) contains no such requirements. 730 ILCS 5/5—2—4(d)(3) (West 1992).

Read together, sections 5—2—4(d) and 5—2—4(e) indicate that the legislature considered that the person filing a section 5—2—4(e) petition was involuntarily committed because he was insane. Thus, to place an insane person in the same position as a facility director would be unrealistic. The legislature intended to give greater probative weight to the recommendations of facility directors because they

are in a position to outline their reasons and recommendations to the court. On the other hand, the legislature intended to protect the liberty interests of insanity acquittees by easing pleading requirements for their petitions for discharge or conditional release.

We hold that the pleading requirements of the Civil Practice Law and 5—2—4(d) of the Unified Code of Corrections (730 ILCS 5/5—2—4(d) (West 1992)) are not applicable to petitions filed by insanity acquittees under section 5—2—4(e).

During oral argument, the State expressed the need to "stem the tide" of section 5—2—4(e) petitions because too many are being filed, thus burdening the court system. The State suggests that a deterrent is necessary so that insanity acquittees will not file frivolous petitions.

It is not the role of this court to "send a message." Instead, this court must give effect to the legislature's intent. In section 5—2—4(e), the legislature set forth the requirements for an insanity acquittee to file a petition for discharge or conditional release and how often he can do so. The right to file petitions so frequently is based on the legislature's recognition that even serious mental illness may be treated in a relatively short period of time. Periodic review is necessary to insure that mental health patients do not languish in mental hospitals when the justification for their confinement has ended.

Section 5—2—4(b) requires that "every 60 days thereafter so long as the initial order remains in effect, the facility director shall file a treatment plan with the court. Such plan shall include an evaluation of the defendant's progress and the extent to which he is benefiting from treatment." 730 ILCS 5/5—2—4(b) (West 1992). This indicates that the legislature wanted to insure that an insanity acquittee not remain committed longer than necessary because it requires periodic review every 60 days.

If the legislature had wanted to require insanity acquittees to set forth specific facts in their petitions, it could have easily done so, as it did for facility directors in section 5—2—4(d). Moreover, the legislature has recently addressed how often a section 5—2—4(e) petition can be filed. When defendant filed his petition, he could do so every 60 days. However, the General Assembly has recently amended section 5—2—4(e) to allow a petition every 120 days instead of every 60 days. 730 ILCS 5—2—4(e) (West Supp. 1995). By enacting this recent amendment, the legislature has addressed the burden of these petitions on the courts.

■ We also agree that striking defendant's petition as insufficient was inconsistent with section 4—202 of the Mental Health and Developmental Disabilities Code (MHDDC), which provides:

"[DMHDD] shall prescribe all forms necessary for proceedings under this Chapter, and all forms used in such proceedings shall comply substantially with the forms so prescribed." 405 ILCS 5/4—202 (West 1992).

"On (date), the Circuit Court of the ____ Judicial Circuit of _____ County found (recipient) to be a person subject to (judicial/involuntary) admission and ordered (specify all provisions of the order).

I hereby request of this court that the above-named person be discharged from _____. This petition is based on the following:
        [space provided]
[ ] A certificate is attached
[ ] I request that this court provide for an examination of the above-named person."

Comparing defendant's petition to the DMHDD form, we conclude that defendant's petition was sufficient. The section entitled "This petition is based on the following:" requires a reason for the petition, not specific facts on which the petition is based. Defendant's petition states in support of his petition that he is "no longer in need of mental health services on an inpatient basis" and that he is "no longer in need of mental health services on either an inpatient or outpatient basis." That is a sufficient reason for the petition even though no specific facts concerning defendant's psychiatric state are included. It would be impractical to require that a mental health patient give his own psychiatric evaluation. Thus, the legislature made it simple for the patient to get an independent psychiatric examination and a hearing on his petition.

Because defendant's petition was sufficient under section 5—2—4(e), he is entitled to a hearing within 30 days, notice of the hearing, and a mandatory opportunity to be present at the hearing. He is also entitled to an independent psychiatric examination, which is tied to his right to a hearing. *Bledsoe*, 268 Ill. App. 3d at 872-73. The psychiatric examination will provide the necessary evidence to help determine whether defendant should be discharged, conditionally released, or remain a mental health inpatient. Thus, we order a psychiatric examination of defendant by an independent psychiatrist who will be able to provide an impartial evaluation of defendant's mental state.

The procedures set forth in section 5—2—4(e) are intended to safeguard the rights of insanity acquittees, who have not been convicted of a crime, but have been found not guilty by reason of insanity and subject to involuntary admission. Because they have not

been convicted of a crime, they may not be punished. *Foucha*, 504 U.S. at 80, 118 L. Ed. 2d at 448, 112 S. Ct. at 1785.

If summary denial of section 5—2—4(e) petitions were allowed without an independent psychiatric examination and a subsequent hearing on the petition, an insanity acquittee could stay in a mental health facility far beyond the time needed to cure his insanity. Considering that the loss of liberty produced by an involuntary commitment is greater than a loss of freedom from confinement as a criminal, detention at a mental health care facility implicates a substantial liberty interest. *Foucha*, 504 U.S. at 78-79, 118 L. Ed. 2d at 447, 112 S. Ct. at 1784-85; *Radazewski v. Cawley*, 159 Ill. 2d 372, 378, 639 N.E.2d 141 (1994). Thus, an insanity acquittee can be held only as long as he is mentally ill. *Foucha*, 504 U.S. at 77, 118 L. Ed. 2d at 446, 112 S. Ct. at 1784. As a matter of due process, it is unconstitutional for a State to confine a harmless, mentally ill person. *Foucha*, 504 U.S. at 77, 118 L. Ed. 2d at 446, 112 S. Ct. at 1784; *O'Connor v. Donaldson*, 422 U.S. 563, 575, 45 L. Ed. 2d 396, 407, 95 S. Ct. 2486, 2493 (1975).

■ Finally, defendant asserts that he did not receive effective assistance of counsel, to which he has a right in all proceedings following an acquittal by reason of insanity. We agree.

Section 5—2—4(c) provides:

"Every defendant acquitted of a felony by reason of insanity and subsequently found to be subject to involuntary admission or in need of mental health services shall be represented by counsel in all proceedings under this Section and under the Mental Health and Developmental Disabilities Code.

(1) The court shall appoint as counsel the public defender or an attorney licensed by this State." 730 ILCS 5/5—2—4(c) (West 1992).

In order to establish ineffective assistance of counsel, a defendant must prove that his counsel was deficient and that he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984). To show prejudice, the defendant must demonstrate that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The reviewing court must focus on the fundamental fairness of the proceeding and consider "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our

system counts on to produce just results." *Strickland*, 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Young*, 220 Ill. App. 3d 98, 107, 581 N.E.2d 371 (1991). At a minimum, defense counsel must act as a true advocate for the accused, subjecting the prosecutor's case to meaningful adversarial testing. *United States v. Cronic*, 466 U.S. 648, 656, 80 L. Ed. 2d 657, 666, 104 S. Ct. 2039, 2045 (1984); *People v. Hattery*, 109 Ill. 2d 449, 461, 488 N.E.2d 513 (1985). If counsel does not act as a true advocate, the adversary process itself is presumptively unreliable. *Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047; *Hattery*, 109 Ill. 2d at 461.

The guidelines for determining when counsel has been ineffective in a criminal trial are applied to a discharge hearing. *People v. Owens*, 269 Ill. App. 3d 152, 159, 645 N.E.2d 483 (1994); *Young*, 220 Ill. App. 3d at 107. Section 5—2—4(c) requires that every insanity acquittee who is involuntarily committed to a mental health facility be vigorously represented by counsel. *Report, Governor's Comm'n for Revision of the Mental Health Code of Illinois*, at 48 (1977).

■ Defendant was denied effective assistance of counsel. After expressing surprise that defendant was allowed to file a petition for discharge or conditional release without consulting hospital personnel, the assistant public defender told the court that he had no argument against the State's motion to strike. He failed to act as a true advocate for defendant by not subjecting the State's case to meaningful adversarial testing. As a result of this failure to properly represent defendant, defendant was not afforded any review of his confinement. Clearly, the lack of proper representation by defendant's attorney was prejudicial to defendant. Consequently, we order that a different assistant public defender be appointed to represent defendant upon remand of this matter.

Based on the foregoing, we reverse the circuit court's judgment and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

TULLY, P.J., and RIZZI, J., concur.