# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***People v. Beeler*, 2012 IL App (4th) 110217**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS BEELER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0217 |
| Argued<br>Filed | May 8, 2012<br>June 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Following a stipulated bench trial in which defendant was found not guilty of first degree murder by reason of insanity, the trial court entered an order finding defendant in need of mental-health services on an inpatient basis in a secure setting and that order was affirmed on appeal, where the required admission hearing was held, the requisite findings were made, the use of stipulations did not "waive" the hearing and there was nothing unreasonable or irrational about defense counsel's strategy with regard to the use of stipulations rather than live testimony, which could have been more harmful to defendant. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 09-CF-978; the Hon. John W. Belz, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Veronique Baker, of Guardianship & Advocacy Commission, of Chicago, and Barbara A. Goeben (argued), of Guardianship & Advocacy Commission, of Alton, for appellant. |
| --- | --- |
| | John Milhiser, State's Attorney, of Springfield (Patrick Delfino, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion. |
| | Justices McCullough and Cook concurred in the judgment and opinion. |

## OPINION

¶ 1    In November 2010, the trial court found defendant, Marcus E. Beeler, not guilty by reason of insanity (NGRI) of first degree murder following a stipulated bench trial. In March 2011, the court found defendant was in need of mental-health services on an inpatient basis in a secure setting.

¶ 2    On appeal, defendant argues (1) his due-process rights were violated at the commitment hearing and (2) he was denied the effective assistance of counsel. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    In November 2009, the State charged defendant by information with one count of attempt (first degree murder) (count I) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)), one count of aggravated battery (count II) (720 ILCS 5/12-4(a) (West 2008)), and three counts of first degree murder (counts III, IV, and V) (720 ILCS 5/9-1(a)(1) (West 2008)). In March 2010, the trial court found defendant fit to stand trial.

¶ 5    In November 2010, the cause came before the trial court in a stipulated bench trial. Both parties stipulated to the psychiatric reports of Dr. Terry Killian. Upon questioning from the court, defendant stated he was 43 years old, had attended 3½ years of college, and could read, write, and understand English. Defendant also stated he was taking medications but they did not affect his ability to understand the proceedings. After the State indicated it would only proceed on count V, defendant indicated he understood the charge and the possible penalties. He also indicated he understood the rights he would be waiving by utilizing the stipulated bench trial.

¶ 6    The State indicated its evidence would show Albert Green was found lying outside in a yard on November 13, 2009, "with his head in a large amount or pool of blood." An

eyewitness would testify defendant beat Green with a table leg. Green died the next day due to massive head trauma. Defense counsel stipulated the psychiatric evidence would show defendant was not guilty by reason of insanity.

¶ 7    The trial court entered an NGRI finding as to the offense of first degree murder. The court noted Dr. Killian's opinion that, at the time of Green's death, defendant was suffering from a severe psychotic episode with marked paranoia and manic features that rendered him incapable of appreciating the criminality of his conduct. The court remanded defendant to the Department of Human Services (DHS) for an evaluation to determine whether defendant was in need of mental-health services.

¶ 8    In March 2011, the trial court held a hearing pursuant to section 5-2-4(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-2-4(a) (West 2008)). Therein, the State and defense counsel stipulated to a DHS report that found defendant was in need of inpatient mental-health services. The court agreed with the stipulation, finding defendant was in need of mental-health services on an inpatient basis in a secure setting. The court remanded defendant to DHS. This appeal followed.

¶ 9                                    II. ANALYSIS
¶ 10                                   A. Jurisdiction
¶ 11   Initially, defendant contends this court has jurisdiction to consider his appeal even though he was found not guilty by reason of insanity. We agree.

¶ 12   Our supreme court has held an NGRI finding is equivalent to an acquittal. *People v. Harrison*, 226 Ill. 2d 427, 439, 877 N.E.2d 432, 438 (2007). As such, it is not subject to appellate review. *Harrison*, 226 Ill. 2d at 441, 877 N.E.2d at 440. However, an NGRI defendant may still challenge the finding that he is in need of inpatient mental-health services. *Harrison*, 226 Ill. 2d at 439, 877 N.E.2d at 438. Here, defendant is not appealing the NGRI finding. Instead, he is challenging the March 2011 commitment order. Thus, we have jurisdiction to hear the appeal.

¶ 13                    B. Commitment Hearing for an NGRI Defendant
¶ 14   Defendant argues the trial court failed to conduct a hearing in this case or erred in waiving the hearing. We find defendant's claim without merit.

¶ 15   If a trial court finds a defendant not guilty by reason of insanity, DHS is required to evaluate the defendant to determine if he is in need of mental-health services. 730 ILCS 5/5-2-4(a) (West 2008). The court is then required to hold a hearing "pursuant to the Mental Health and Developmental Disabilities Code [(Mental Health Code)] to determine whether the defendant is subject to involuntary admission." 725 ILCS 5/115-3(b) (West 2008); see also 730 ILCS 5/5-2-4(a) (West 2008) (stating the court is to determine whether the defendant is in need of mental-health services on an inpatient or outpatient basis or none at all). The court is required to enter its findings. 730 ILCS 5/5-2-4(a) (West 2008).

¶ 16   Defendant's claim that no admission hearing was held in this case or that the trial court waived the hearing is without merit. On March 9, 2011, the court held "a further hearing after

a finding of not guilty by reason of insanity." An assistant State's Attorney appeared as did defendant and his counsel. No one "waived" the hearing. The court did not prevent anyone from proceeding in a manner of his or her choosing. Instead, a hearing took place in which a stipulation was entered as to the evidence the court was to consider in making its decision. Based on the February 15, 2011, report and the stipulation of the parties, the court entered its written order and found defendant to be a person in need of mental-health services on an inpatient basis in a secure setting. Accordingly, we find the court held the hearing and entered the requisite findings.

¶ 17                                    C. Stipulation

¶ 18     Defendant also argues the State's case cannot be based solely on a stipulation. We disagree.

¶ 19     "A stipulation is an agreement between litigants or their attorneys with respect to an issue before the court." *People v. Carodine*, 374 Ill. App. 3d 16, 27, 869 N.E.2d 869, 880 (2007). Courts look favorably upon stipulations "because ' "they tend to promote disposition of cases, simplification of issues[,] and the saving of expense to litigants." ' [Citation.]" *People v. Woods*, 214 Ill. 2d 455, 468, 828 N.E.2d 247, 256 (2005).

¶ 20     Defendant argues neither the Mental Health Code nor the Unified Code contains provisions for the stipulation of all the evidence. We note section 3-807 of the Mental Health Code (405 ILCS 5/3-807 (West 2008)) provides as follows:

> "No respondent may be found subject to involuntary admission unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing. The respondent may waive the requirement of the testimony subject to the approval of the court."

The language of the statute can be read as permitting the use of a stipulation to present the expert's opinion in lieu of live testimony. The use of stipulations does not "waive" the hearing, and it does nothing to encourage parties to waive their right to a hearing, as defendant argues. See *People v. Johnson*, 2012 IL App (5th) 070573, ¶ 24, 2012 WL 340287 (stating a stipulation to the doctor's report in lieu of live testimony did not constitute "a waiver of the entire hearing").

¶ 21                            D. Due-Process Admonitions

¶ 22     Defendant argues the stipulation entered into in this case was tantamount to a guilty plea and the trial court erred in failing to admonish him about the right to confront witnesses against him. We disagree.

¶ 23     In support of his contention, defendant relies on Illinois Supreme Court Rule 402 (eff. July 1, 1997) as well as several criminal decisions by the supreme court. Supreme Court Rule 402 requires admonishments by the trial court in "hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict."

¶ 24     In considering a stipulation, the supreme court has noted "defense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision

-4-

to stipulate is a matter of trial tactics and strategy." *People v. Campbell*, 208 Ill. 2d 203, 217, 802 N.E.2d 1205, 1213 (2003). The court "carved a limited exception to this general rule, however, where a stipulation is the practical equivalent of a plea of guilty, holding that 'defense counsel cannot stipulate to facts which establish the guilt of the accused because the constitutional right implicated in that situation is the right of a defendant in a criminal case to plead not guilty.' " *People v. Clendenin*, 238 Ill. 2d 302, 319, 939 N.E.2d 310, 320 (2010) (quoting *Campbell*, 208 Ill. 2d at 219, 802 N.E.2d at 1214). The court went on to state "that departure from the general rule that defense counsel may waive a defendant's right of confrontation is warranted *only* in those instances where: (1) the State's entire case is presented by stipulation and defendant fails to preserve a defense; or (2) the stipulation concedes the sufficiency of the evidence to support a conviction." (Emphasis in original.) *Clendenin*, 238 Ill. 2d at 319, 939 N.E.2d at 320 (citing *Campbell*, 208 Ill. 2d at 218, 802 N.E.2d at 1213). Accordingly, a defendant "must be personally admonished about a stipulation and must personally agree to it." *Clendenin*, 238 Ill. 2d at 319-20, 939 N.E.2d at 320-21.

¶ 25    In contrast to the cited cases, this case does not involve a guilty plea to criminal charges. See *Johnson*, 2012 IL App (5th) 070573, ¶ 15, 2012 WL 340287. Instead, it involves a civil-commitment proceeding to determine whether defendant was in need of mental-health services on an inpatient or outpatient basis. Thus, Rule 402 does not apply.

¶ 26    We find support that Rule 402 does not apply in these situations by looking at our prior decision in *People v. Bramlett*, 329 Ill. App. 3d 286, 767 N.E.2d 961 (2002). In that case, the defendant argued the trial court erred in allowing him to stipulate to evidence establishing him as a sexually dangerous person without admonishing him pursuant to Rule 402 to determine the voluntariness of his stipulation. *Bramlett*, 329 Ill. App. 3d at 289, 767 N.E.2d at 964. This court noted a proceeding under the Sexually Dangerous Persons Act (725 ILCS 205/0.01 to 12 (West 1998)) is civil in nature, as it seeks the commitment of sexually dangerous persons for treatment rather than for punishment. *Bramlett*, 329 Ill. App. 3d at 290, 767 N.E.2d at 964-65. Therefore, Rule 402 did not apply. *Bramlett*, 329 Ill. App. 3d at 290, 767 N.E.2d at 965. Moreover, we found "there is no constitutional requirement that the trial court give admonishments to defendant to determine the voluntariness of a stipulation." *Bramlett*, 329 Ill. App. 3d at 292, 767 N.E.2d at 966.

¶ 27    In *People v. Pembrock*, 23 Ill. App. 3d 991, 996, 320 N.E.2d 470, 474 (1974), the defendant in a sexually-dangerous-persons proceeding argued he was denied his right to confront witnesses against him when his attorney stipulated to the admission of psychiatric reports. The First District found due process was not violated with the stipulation to the admission of the reports into evidence. *Pembrock*, 23 Ill. App. 3d at 997, 320 N.E.2d at 475. The appellate court also found Rule 402 admonitions were not required and stated as follows:

> "[W]e do not believe that other elements of the criminal process, such as admonitions regarding a right to a jury trial, a right to appeal and the consequences of a guilty plea, are also constitutionally required as has been contended by defendant. We have noted above that the requirements of due process are not static but may vary depending upon the nature of the interests involved. While both the civil proceedings in question and criminal prosecutions may result in a loss of liberty, substantial differences exist between

them. Foremost among these are that in a commitment under the Act there is no inference of moral blameworthiness since a finding of sexual dangerousness indicates that a defendant's inability to conform to the dictates of the law is the product of a mental illness and, secondly, commitment under the Act, unlike criminal incarceration, is not intended as punishment. Thus our supreme court has specifically rejected defendant's arguments regarding jury trial admonitions [citation] and right to appeal [citation]. Moreover, since commitment under the Act does not constitute a criminal conviction, Supreme Court Rule 402 [citation] does not apply." *Pembrock*, 23 Ill. App. 3d at 995, 320 N.E.2d at 473-74.

A similar result is appropriate in this case. Like the Sexually Dangerous Persons Act, the commitment of a defendant found NGRI is a civil proceeding. A defendant in an NGRI proceeding has been found not guilty of committing the offense for a particular reason. As an NGRI finding is an acquittal, punishment for a criminal conviction would be inappropriate. Thus, commitment is not intended as punishment for a crime but rather as commitment for mental-health reasons. Accordingly, Rule 402 does not apply and a defendant need not be admonished before a stipulation as to the evidence can be used in an NGRI proceeding.

¶ 28    Moreover, we note defendant did not stipulate he was subject to hospitalization for mental-health treatment under the Unified Code. The only stipulation was to the DHS report and its conclusion that defendant was in need of inpatient mental-health services. No stipulation was entered as to the legal conclusion that the requirements of section 5-2-4 of the Unified Code had been satisfied or that defendant was in need of inpatient treatment. Instead, it was for the trial court to decide based on the stipulated evidence.

¶ 29    Defendant also argues that, if the stipulation was allowed in the commitment hearing, it was inadequate because it was not reduced to writing. However, the parties indicated they were stipulating to the contents of the DHS report dated February 15, 2011, wherein it was found defendant was in need of inpatient mental-health services. This was sufficient to inform the trial court of the terms of the stipulation such that it could make an informed decision as to whether defendant was in need of inpatient services.

¶ 30                                    E. Assistance of Counsel

¶ 31    Defendant argues defense counsel failed to engage in any adversarial testing of whether he met the criteria for inpatient treatment and thus defendant received ineffective assistance of counsel. We disagree.

¶ 32    According to section 5-2-4(c) of the Unified Code (730 ILCS 5/5-2-4(c) (West 2008)), "[e]very defendant acquitted of a felony by reason of insanity and subsequently found to be in need of mental health services shall be represented by counsel in all proceedings under this Section and under the Mental Health and Developmental Disabilities Code." The section "requires that every insanity acquittee who is involuntarily committed to a mental health facility be vigorously represented by counsel." *People v. Shelton*, 281 Ill. App. 3d 1027, 1037, 667 N.E.2d 562, 569 (1996) (where an NGRI defendant raised an allegation of the ineffective assistance of counsel).

¶ 33 Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Shelton*, 281 Ill. App. 3d at 1036, 667 N.E.2d at 569. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20, 808 N.E.2d at 953 (citing *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *Clendenin*, 238 Ill. 2d at 317-18, 939 N.E.2d at 319.

¶ 34 In making his argument that counsel's performance was deficient, defendant again claims no hearing was held because of the stipulation. As stated, we disagree with the argument that no hearing was held. Moreover, the use of a stipulation does not establish ineffective assistance of counsel.

¶ 35 "In assessing counsel's performance, the reviewing court must indulge in a strong presumption that counsel's conduct fell into a wide range of reasonable representation, and the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *People v. Cloutier*, 191 Ill. 2d 392, 402, 732 N.E.2d 519, 525 (2000). "To overcome this strong presumption, defendant must demonstrate trial counsel's decision was so unreasonable and irrational that no reasonably effective defense attorney faced with similar circumstances would pursue that strategy." *People v. Mabry*, 398 Ill. App. 3d 745, 751, 926 N.E.2d 732, 738 (2010).

¶ 36 We find nothing unreasonable or irrational with counsel's strategy here. It was reasonable to use the stipulation rather than present live testimony from the psychologist, which could prove to be more harmful to defendant than the sterile evaluation and recommendation. See *People v. Phillips*, 217 Ill. 2d 270, 284, 840 N.E.2d 1194, 1203 (2005) ("As a matter of trial strategy, defense counsel might choose to stipulate to evidence in an effort to minimize the adverse impact it will have at trial."). Defendant has failed to establish counsel's performance fell below an objective standard of reasonableness.

¶ 37 Moreover, even if counsel's performance could be considered substandard, defendant cannot show he was prejudiced such that the result of the proceeding would have been different. The February 15, 2011, report indicated defendant was 43 years old and had 43 prior admissions to various hospitals since 1987. The report established defendant had been diagnosed with schizoaffective disorder, bipolar type; a history of polysubstance abuse (alcohol, cocaine, and cannabis); and antisocial personality disorder. The report indicated defendant was at risk because of his psychotic symptoms, his history of hallucinations and delusions, his poor insight into his illness and need for treatment compliance, his history of aggression, his felony history, and his history of substance abuse. The report also indicated defendant was "unlikely to comply with treatment outside of this structured treatment setting." The report opined defendant was in need of mental-health services on an inpatient

basis and should be placed in the custody of DHS in a secure setting.

¶ 38      Based on the DHS report, the trial court would not have entered a different judgment had the report been presented through the testimony of Dr. David Gilliland, the clinical psychologist who authored the report. The evidence clearly showed defendant was in need of mental-health services on an inpatient basis. As the result of the proceeding would not have changed had defense counsel called Dr. Gilliland to testify, defendant cannot establish counsel was ineffective.

¶ 39                         III. CONCLUSION

¶ 40      For the reasons stated, we affirm the trial court's judgment.

¶ 41      Affirmed.