# Illinois Official Reports

## Appellate Court

---

### *People v. Bethke*, 2014 IL App (1st) 122502

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL BETHKE, Defendant-Appellant. |
| District & No. | First District, Fourth Division <br> Docket No. 1-12-2502 |
| Filed | February 6, 2014 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the denial of defendant's request for "supervised off-grounds pass privileges" after he had been in a mental health center for over 20 years following a finding in 1991 that he was not guilty of first degree murder by reason of insanity when he killed a coworker, the appellate court remanded the cause to allow the trial court to make more specific findings of fact and conclusions of law pursuant to the requirements of section 3-816(a) of the Mental Health and Developmental Disabilities Code and section 5-2-4 of the Unified Code of Corrections. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 91-C-660917-01; the Hon. Frank G. Zelezinski, Judge, presiding. |
| Judgment | Remanded. |
| Counsel on Appeal | Mark J. Heyrman, of Edwin F. Mandel Legal Aid Clinic, of Chicago, for appellant. <br><br> Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People. |

Panel                              JUSTICE LAVIN delivered the judgment of the court, with opinion.

Presiding Justice Howse and Justice Epstein concurred in the judgment and opinion.

## OPINION

¶ 1        In this rather unusual appeal, we confront the trial court's denial of a petition filed on behalf of defendant Michael Bethke recommending that he be allowed escorted leave of the mental health center's premises, or "supervised off-grounds pass privileges" pursuant to sections 5-2-4(b) and (e) of the Unified Code of Corrections (Code) (730 ILCS 5/5-2-4(b), (e) (West 2010)). Following an evidentiary hearing on the matter, the trial court denied the petition. On appeal, defendant asserts that the trial court's decision was against the manifest weight of the evidence, that the trial court based its decision on an impermissible standard, and that the trial court failed to make findings of fact as required by section 3-816(a) of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3-816(a) (West 2010)). We remand.

¶ 2                                  BACKGROUND

¶ 3        Defendant, age 49, has lived at the Elgin Mental Health Center in the custody of the Illinois Department of Human Services (see 730 ILCS 5/5-2-4 (West 2010); 405 ILCS 5/3-100 *et seq.* (West 2010)) since 1993 after the trial court found him not guilty of first degree murder by reason of insanity. For the sake of judicial context, we will briefly relate the rather grisly circumstances that led do this conviction.[1] On June 6, 1991, defendant apparently experienced irresistible "command hallucinations" urging him to kill his coworker at a White Hen Pantry. Unable to control these voices, defendant took a knife from the deli counter and decapitated his coworker, then wrote on the coworker's head in blood, and placed the head, as if on display, in the deli case. After wandering in the woods, defendant told a bystander to call the police. Doctors at the Elgin Mental Health Center (EMHC) diagnosed defendant with schizoaffective disorder, bipolar type with a history of substance abuse. He has been receiving inpatient treatment and medication since his admission to EMHC to control symptoms ranging from paranoid delusions to auditory hallucinations and mood swings.

¶ 4        In April 2012, defendant's EMHC treatment team, consisting of his treating psychiatrist, Hasina Javed, along with a psychologist and social worker, filed a report in support of the

---

[1] Appellant's opening brief was notably silent on the factual circumstances underlying his conviction, which is curious since these ghoulish facts seemed to constitute the primary basis of the trial court's ruling. The State, on the other hand, supplied this court with the necessary information in the first paragraph of its brief.

petition to modify defendant's treatment plan and recommending off-grounds pass privileges. They reported that over the course of the last 20 years, defendant made substantial progress in his treatment and recovery. He accepted his mental illness and recognized his need to stay medicated while participating in psychotherapy. In fact, his team reported that his medication compliance was "excellent." In 2000, defendant graduated from a mental illness and substance abuse program and completed online college education classes. According to the report, he continued to participate in therapy groups and workshops and complied with the doctors' treatment plans. In spite of these positive advancements and even though he was medicated at the time, defendant experienced extreme paranoia and auditory hallucinations, with voices telling him he was "evil," following the events of September 11, 2001. The 2005 tsunami in Asia possibly precipitated angry behavior and aggression toward another patient, but defendant's medication was adjusted with positive results. The report stated that, "to manage his reaction to natural disaster events," defendant used "careful self monitoring, limited media exposure, and distraction."

¶ 5    In 2009, at the request of the EMHC treatment team, defendant was granted unsupervised on-grounds passes, and he used those for some two years to take unescorted walks on hospital grounds without making any attempts to elope.

¶ 6    In June 2012, forensic clinical services director and forensic psychiatrist, Dr. Mathew Markos, examined defendant pursuant to court order. Following review of relevant records and consistent with the treatment team report, Dr. Markos recommended that defendant be allowed supervised off-grounds pass privileges (to visit such places as the YMCA, the public library, or the mall while being escorted by EMHC staff). In support of this recommendation, Dr. Markos stated that with medication defendant was in remission of his mental illness, defendant was clinically and behaviorally stable and compliant with treatment, and defendant had used his on-grounds pass since 2009 without incident.

¶ 7    An evidentiary hearing on the petition for supervised off-grounds passes ensued, and the defense called Dr. Markos, who testified consistent with his court-ordered examination of defendant, and the defense also called Dr. Javed at EMHC. Both doctors testified that the passes were safe, insofar as defendant was not likely to harm himself or others, and the passes would have the beneficial effect of facilitating defendant's continuing progress in treatment. Dr. Markos emphasized that defendant had been mentally stable since 2009 and compliant with treatment recommendations, and Dr. Markos emphasized that the passes would enable defendant to attend a community drug rehabilitation program, helping with defendant's "reintegration" into society. He added that during the off-grounds ventures, the ratio of staff to patients was "approximately three to one" with staff making sure the patients "get their medication," although Dr. Markos did allow on cross-examination that he was unsure of the staff members' training or whether they could recognize if defendant's mental state were to deteriorate. Dr. Markos also stated that if defendant did not receive his medication, he could relapse within one to two days or within weeks.

¶ 8    Dr. Javed testified that defendant was aware that if he did not take his medications, his symptoms would return, but she also added that "any major disaster or event," like September 11 or the tsunami, could "trigger psychosis" even though defendant was medicated. Regarding

the tsunami, Dr. Javed emphasized that defendant was able to report his symptoms of psychosis to staff and obtain relief. Dr. Javed testified that during outings defendant would be escorted by a security officer or an "activity therapist." The only escort at the drug rehabilitation facility would be a security officer. She testified that before each trip, she would assess defendant, and if defendant was not stable or if he declined medication, he would not be allowed to leave. Dr. Javed conceded on cross-examination that she would not be able to determine if defendant in fact had taken his medication.

¶ 9    Following evidence and argument, the court denied the petition. The court noted the testimony of both doctors, the argument by counsel, and the fact that defendant had been in EMHC for an extended period of time based on the court's previous finding of not guilty by reason of insanity. The court also noted that defendant had been granted on-grounds pass privileges. The court stated it had "looked at all the other factors here," then stated:

> "The Court cannot but not [*sic*] look at the reasons why Mr. Bethke is in fact at the Illinois Department of Human Services under treatment.
>
> I have heard the testimony of the [*sic*] Dr. Markos for that matter, indicating there is in fact a risk factor to be considered.
>
> Considering all factors here, this Court is not convinced that the defendant will be guaranteed–[t]hat he will not be a risk to himself and others if allowed into the general public. And, therefore, the request for supervised off ground privileges is denied."

¶ 10    This timely appeal followed.

¶ 11                                    ANALYSIS

¶ 12    On appeal, defendant contends (1) that the trial court's denial of the off-grounds passes was against the manifest weight of the evidence, (2) that the trial court based its decision on a requirement of a guarantee that defendant's future behavior while on such a pass posed no risk, and (3) that the trial court failed to make findings of fact, as required by section 3-816(a) of the Mental Health Code (405 ILCS 5/3-816(a) (West 2010)). We conclude that defendant's third contention is dispositive and therefore need not address his remaining contentions.

¶ 13                    Treatment Plan Review and Modification

¶ 14    When an individual has been acquitted of a crime by reason of insanity, his subsequent treatment is governed by section 5-2-4 of the Code, which authorizes the acquittee's involuntary commitment in order to treat the individual's mental illness and also to protect him and society from his potential dangerousness. 730 ILCS 5/5-2-4 (West 2010); *People v. Jurisec*, 199 Ill. 2d 108, 115 (2002). The request for off-grounds pass privileges from such a defendant is specifically governed by sections 5-2-4(b) and (e) of the Code. 730 ILCS 5/5-2-4(b), (e) (West 2010). Section 5-2-4(b) relates to inpatient mental health services after a person is acquitted by reason of insanity and says, in relevant part, that the facility director shall file a treatment plan report, which may include a request for off-grounds pass privileges. 730 ILCS 5/5-2-4(b) (West 2010).

- 4 -

¶ 15     In this case, it is clear that while defendant's previous treatment plan provided for on-grounds pass privileges, it did not go so far as to provide off-grounds privileges. When a petition for treatment plan review is filed by the defendant or, in this case, a person on the defendant's behalf, including a request for off-grounds pass privileges, a hearing must follow. If evidence is presented, the burden of proof remains with the defendant and the "findings of the Court shall be established by clear and convincing evidence." 730 ILCS 5/5-2-4(e), (g) (West 2010); see also *People v. Cross*, 289 Ill. App. 3d 876, 887 (1997) (section 5-2-4(b) applies when application for pass privileges constitutes a modification of defendant's treatment plan). Section 5-2-4(b) requires that such privileges be approved by court order, "which order may include such conditions on the defendant as the Court may deem appropriate and necessary to reasonably assure the defendant's satisfactory progress in treatment and the safety of the defendant and others." 730 ILCS 5/5-2-4(b) (West 2010).

¶ 16     Defendant, in arguing that "the trial court committed reversible error when it failed to make findings of fact," points to section 3-816(a) of the Mental Health Code (405 ILCS 5/3-816(a) (West 2010)), which provides: "Every final order entered by the court under this Act [Mental Health Code] shall be in writing and shall be accompanied by a statement on the record of the court's findings of fact and conclusions of law." The Mental Health Code similarly addresses the institutional care and commitment of individuals for mental health reasons. The State acknowledges that section 5-2-4(b) provides that the review of treatment plans for defendants acquitted by reason of insanity "shall be under the Mental Health and Developmental Disabilities Code" (730 ILCS 5/5-2-4(b) (West 2010)) but asserts that section 3-816(a), requiring findings of fact by the trial court, conflicts with section 5-2-4 of the Code. But see 405 ILCS 5/3-814(c) (West 2010) (noting that a not-guilty-by-reason-of-insanity defendant's "treatment plan and its review shall be subject to the provisions of Section 5-2-4"). The State argues that in the event of a conflict between the Mental Health Code and the Code, section 5-2-4(k) provides that the Code controls. See 730 ILCS 5/5-2-4(k) (West 2010).

¶ 17     We fail to see any such statutory conflict. Our primary objective in interpreting a statute is to give effect to the legislature's intent, which is best done by reviewing statutory language in its plain and ordinary meaning. *People v. Giraud*, 2012 IL 113116, ¶ 6. The language in each section of a statute must be examined in light of the statute as a whole, which is construed in conjunction with other statutes touching on similar and related enactments, though not strictly *in pari materia*. *Relf v. Shatayeva*, 2013 IL 114925, ¶¶ 23, 39. We must presume that several statutes relating to the same subject are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious. *Id*. ¶ 39. Here, we conclude that section 3-816(a) does not conflict with section 5-2-4, but is consistent with that statutory provision and clarifies the trial court's duties in a case like the present. See, *e.g.*, *People v. Chiakulas*, 288 Ill. App. 3d 248, 252 (1997) (finding the Code and Mental Health Code sections on treatment plans complementary, rather than conflicting); but see *People v. Owens*, 269 Ill. App. 3d 152, 154-55 (1994) (section 5-2-4 of the Code controls). The clear language of section 5-2-4 of the Code, giving the trial court wide discretion in granting and tailoring passes, when read together with section 3-816(a) of the Mental Health Code supports our conclusion that the trial court must make adequate findings of fact and conclusions of law

for a reviewing court to effectively address the trial court's judgment. See 730 ILCS 5/5-2-4(b) (West 2010) (providing that the court "may" impose "conditions" on the defendant in relation to the privileges); see also *People v. Cross*, 301 Ill. App. 3d 901, 910 (1998) (holding that the statute does not mandate that the trial court grant pass privileges even if defendant's treatment team, including the facility director, recommends the passes be granted); *People v. Williams*, 140 Ill. App. 3d 216, 226 (1986) (it is the trier of fact and not the psychiatrists who considers and weighs the evidence). This statutory interpretation is also consistent with our deferential standard of review on appeal, for we will not reverse a trial court's determination regarding pass privileges unless it is against the manifest weight of the evidence, which occurs only when the opposite conclusion is clearly evident. See *People v. Wolst*, 347 Ill. App. 3d 782, 790 (2004). Given the delicacy of cases involving an individual's mental health treatment and its relationship to public safety, the discretion vested in the trial court is even greater than an ordinary appeal applying the manifest weight principle. *Cf. In re R.S.*, 382 Ill. App. 3d 453, 459-60 (2008).

¶ 18    Having determined that the trial court is required to make sufficient findings of fact and conclusions of law in relation to the denial of pass privileges following an evidentiary hearing, we conclude that the fact findings in this case fell demonstrably short of satisfying that standard. Here, the trial court identified the statutory standard requiring that the passes be conducive with the safety of defendant and others, but then the trial court denied the supervised off-grounds pass privileges almost exclusively because of the undeniably horrific nature of the original crime committed some 20 years ago while defendant was not being treated for his psychiatric illness. Suffice it to say that merely reciting the facts of the crime committed while mentally ill does not supply the trial court with "clear and convincing" evidence that off-grounds privileges should not be granted. While the court cited a "risk factor" identified by Dr. Markos as a potential basis for denial of the passes, it did not elaborate on what that risk factor was, leaving this court to do the guesswork. Given the apparent importance placed by mental health professionals on this sort of activity, we must call upon the trial court to justify its ruling by referencing facts related to defendant's current mental health status as opposed to reflexive reference to the admittedly horrific underlying crime. The trial court is certainly entitled to consider a defendant's original reason for inpatient institutionalization, but it cannot rely on that alone; it must also consider the individual's treatment history and current mental status in determining whether to grant or deny passes that serve as a step toward possibly renewing the patient's liberty. See 730 ILCS 5/5-2-4(g) (West 2010); *People v. Robin*, 312 Ill. App. 3d 710, 716 (2000) (once a not-guilty-by-reason-of-insanity defendant is involuntarily admitted, he may be held only so long as he is both mentally ill and dangerous, and as a matter of due process, it is unconstitutional for the State to confine a harmless mentally ill person); *People v. Shelton*, 281 Ill. App. 3d 1027, 1036 (1996) (same); *Cross*, 301 Ill. App. 3d at 911-12 (considering past behavior in denying supervised off-grounds pass privileges); see also *People v. Harrison*, 366 Ill. App. 3d 210, 216-17 (2006) (the confinement of a person found not guilty by reason of insanity is not for punishment, but rather treatment and protection); *Turner v. Campagna*, 281 Ill. App. 3d 1090, 1093-94 (1996) (noting same regarding primary objective of section 5-2-4). In addition, the standard cannot be a "guarantee" of future behavior,

otherwise no person in defendant's place would be permitted off-grounds passes or any form of release. See *People v. Blumenshine*, 72 Ill. App. 3d 949, 955 (1979).

¶ 19 From our reading of the record, in denying the passes, the trial court could have found the evidence insufficient to ensure that defendant would be medicated prior to the off-grounds outings. Likewise, although defendant was progressing positively, the evidence also indicated he could easily relapse if he did not take his medication or, even while medicated, if he was exposed to a traumatic event. The trial court could have found there were insufficient safeguards to address such a relapse should it take place in public and there was no indication that trained staff would be present to effectively handle the relapse given defendant's large size and apparent strength. As we are not the "fact finder" with a view of the witnesses' credibility, however, we are not in a position to be making these factual conclusions to support the court's judgment. See, *e.g.*, *In re G.W.*, 357 Ill. App. 3d 1058, 1060 (2005) (appellate court cannot meaningfully review or defer to findings that were never made). Thus, although there is evidence in the record and testimony from the witnesses that would support the court's denial of the off-grounds pass privileges, we decline to address the merits of the case absent additional findings of fact from the trial court. See *In re Madison H.*, 215 Ill. 2d 364, 378 (2005); see also *In re James S.*, 388 Ill. App. 3d 1102, 1105, 1107 (2009) (trial court's statement, "having heard the testimony and observed the witnesses," was an insufficient finding of fact under section 3-816(a) for the involuntary administration of psychotropic medication).

¶ 20                                         CONCLUSION

¶ 21 Accordingly, we remand the cause to the trial court for the limited purpose of allowing the court to enter more specific findings of fact and conclusions of law, consistent with the requirements of section 3-816(a) of the Mental Health Code and section 5-2-4 of the Code. 405 ILCS 5/3-816(a) (West 2010); 730 ILCS 5/5-2-4 (West 2010); see *In re Madison H.*, 215 Ill. 2d at 378. In the unlikely event the trial court deems the evidence sufficient to support off-grounds pass privileges, we hold that additional evidence must be presented showing defendant's mental health and treatment have not changed since the passes were initially recommended in 2012.

¶ 22 Remanded.